1
2
3
4                    UNITED STATES DISTRICT COURT

5                    EASTERN DISTRICT OF CALIFORNIA

6

7    TALK N WIN, INC., et al.,              CASE NO. CV F 13-0971 LJO SMS

8                     Plaintiffs,           **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
                                            **MOTIONS TO DISMISS**
9                                           (Docs. 25, 27.)

10

11        vs.

12

13   KAMALA D. HARRIS, et al.,

14                     Defendants.

15   _____/

16          **PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

17          Judges in the Eastern District of California carry the heaviest caseload in the nation,

18   and this Court is unable to devote inordinate time and resources to individual cases and

19   matters.  This Court cannot address all arguments, evidence and matters raised by parties and

20   addresses only the arguments, evidence and matters necessary to reach the decision in this

21   order given the shortage of district judges and staff.  The parties and counsel are encouraged to

22   contact United States Senators Dianne Feinstein and Barbara Boxer to address this Court's

23   inability to accommodate the parties and this action.  The parties are required to consider, and

24   if necessary, to reconsider consent to one of the Court's U.S. Magistrate Judges to conduct all

25   further proceedings in that the Magistrate Judges' availability is far more realistic and

26   accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must

27   prioritize criminal and older civil cases.  A Magistrate Judge consent form is available on this

28   Court's website.

                                     1

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters.  Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial.  If a trial trails, it may proceed with little advance notice, and the parties and counsel may be expected to proceed to trial with less than 24 hours notice.  Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges.  In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.  Case management difficulties, including trial setting and interruption, are avoided if the parties consent to conduct of further proceedings by a U.S. Magistrate Judge.

## **INTRODUCTION**

Defendant California and Tulare County law enforcement officials seek to dismiss as legally barred and insufficiently pled plaintiff Talk N Win, Inc. ("TNW") and Silva Ghreir's ("Ms. Ghreir's") constitutional deprivation and related claims arising from seizure of computers and related equipment in connection with criminal investigation into gambling activities. TNW and Ms. Ghreir (collectively "plaintiffs") respond that their operative First Amended Complaint ("FAC") alleges sufficient facts to implicate the law enforcement officials in violations of plaintiffs' constitutional rights and wrongful detention of their property to require declaratory relief.  This Court considered on the record the F.R.Civ.P. 12(b)(6) motions of defendants California Attorney General Kamala D. Harris ("AG Harris"), Wayne Quint ("Chief Quint"), Bureau Chief of the California Bureau of Gambling Control ("Bureau"), and Tulare County District Attorney Tim Ward ("DA Ward").[1]  This Court VACATES the December 2 and 3, 2013 hearings on the motions to dismiss.  *See* Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES the FAC's claims against the state defendants and DA Ward.

---

[1]     The City of Visalia ("City") is a defendant and filed an answer to the FAC, which alleges wrongdoing by the Visalia Police Department ("VPD").  AG Harris and Chief Quint will be referred to collectively as the "State defendants."

# BACKGROUND[2]

## Plaintiffs' Telephone Card Promotion

TNW distributes rechargeable prepaid telephone calling cards and promotional software to advertise calling cards and provides consulting services for its clients regarding marketing. TNW is a distributor "Tel-Connect" domestic long distance cards ("phone cards") for Pong Marketing and Promotions, Inc. ("Pong"). The phone cards are sold in retail stores with which TNW and Pong have entered into location agreements. To promote the phone cards, TNW offers the Pong Marketing Sweepstakes Management System 3.0 computer software to enable stores' customers to participate in a sweepstakes game through computer workstations. The game offers instant cash prizes.

To participate in the game, a customer types in an account number. The promotional game server communicates with the customer's computer to sequentially select an electronic game piece from a finite field or batch. Each game piece is pre-assigned with a prize value that is revealed on the customer's computer screen in entertaining and colorful displays.

Ms. Ghreir owns and operates her Dreamland and Wonderland stores (collectively "stores") in Visalia, California. The stores make retail sales of phone cards, and their primary business is phone card sales. Ms. Ghreir licenses TNW's software to allow customers to play the sweepstakes game on computer terminals.

## Bureau Law Enforcement Advisory

The Bureau issued its December 5, 2012 law enforcement advisory ("advisory") to address computer sweepstakes games:

> With increasing frequency, so-called "Internet cafes" that sell Internet time or phone cards in conjunction with a "promotional sweepstakes," are operating throughout California. The "sweepstakes aspect" of the Internet cafes permits customers to play gambling-themed games on computers to win cash prizes. The Bureau . . . considers Internet cafes that offer these types of sweepstakes to be illegal gambling operations.

The advisory addresses "method of operation":

> After making a purchase of Internet time or phone time, customers swipe the

---

[2]    The factual recitation summarizes the FAC and other matters which this Court may consider.

magnetic card through a card reader at a computer terminal or station inside the Internet café to play gambling-themed games.   Along with Internet time or phone time, customers receive sweepstakes "entries" or "credits" based upon the amount spent (e.g., 100 sweepstakes entries for $1.00 of Internet time purchased).   The sweepstakes entries are displayed on the computer screens as "credits."   The customer then has the option to select one of several gambling-themed games and makes bets with the credits.   Customers who win prizes can cash in any winnings, or use the winnings to purchase additional internet time and sweepstakes entries.

The advisory characterizes as illegal slot machines or devices computers that offer the sweepstakes described in the advisory.   The advisory further addresses Bureau assistance to local law enforcement:

> The Bureau will assist California law enforcement agencies working toward prosecution or pursuing civil or administrative actions in connection with Internet café gambling operations.   Assistance may encompass advice, Bureau personnel and equipment, search warrant examples, and other experienced assistance with enforcement operations.   The local law enforcement agency will retain the lead role and be responsible for evidence retention, seizure of funds, and prosecution, or civil or administrative action against the establishment.

The FAC accuses the Bureau and the California Department of Justice ("DOJ") to have disseminated the advisory to local law enforcement agencies, including the Tulare County District Attorney's Office ("DA's Office"), and to have assisted them to raid and close stores that sell prepaid phone cards using sweepstakes promotions.

## Investigation By Tulare County District Attorney's Office

Near the end of January 2013, J. Lee ("Investigator Lee"), a DA's Office investigator, visited Ms. Ghreir's stores and asked how the businesses worked.   Investigator Lee told TNW's Michael Strawbridge ("Mr. Strawbridge") of the advisory concerning plaintiffs' type of business and that he investigated whether plaintiffs' businesses conducted illegal gambling as described in the advisory.   Investigator Lee was given a complete demonstration of the products and sweepstakes program and spent an hour at the stores.

On February 11, 2013, Investigator Lee visited the Dreamland store and was given a complete demonstration of the sweepstakes program and phone cards and was allowed to

4

search and investigate the store.  Investigator Lee spend nearly three hours at the store.

VPD officer Clay Moffett ("Officer Moffett") prepared a search warrant affidavit ("affidavit") at issue in this action and which indicates that he "spoke with the Tulare County District Attorney's Office along with investigators and several Detectives throughout the Central Valley in regard to the operation of illegal gambling establishments."

### The Bureau's Investigation

A DOJ agent contacted VPD about illegal gambling at Internet cafes.  In February 2013, DOJ and/or Bureau agents met with VPD and possibly DA Ward.  In May 2013, two DOJ agents conducted an undercover investigation of Ms. Ghreir's stores in conjunction with VPD.  Plaintiffs characterize the investigation to include inspection of Ms. Ghreir's stores and equipment, speaking with customers and employees, and playing the promotional sweepstakes games.

Officer Moffett's affidavit notes that:

1.     He was contacted by DOJ Agent Gene Pinon ("Agent Pinon") regarding gambling casinos in Visalia and "was advised that they were operating as internet cafes, named Wonderland and Dreamland";

2.     Agent Pinon had provided Officer Moffett with California Department of Motor Vehicles ("DMV") printouts of Ms. Ghreir and obtained the printouts by entering Ms. Ghreir's address into the DMV data base; and

3.     On May 9, 2013, Officer Moffett conducted "an undercover detail utilizing two undercover Department of Justice Task Force Agents to enter the businesses."

In May 2013, Mr. Strawbridge met with Chief Quint, Assistant Bureau Chief Martin Horan, and Deputy Attorney General Tim Muscat to address the advisory.  Mr. Strawbridge explained the "irreparable effects" of the advisory and law enforcement policies on TNW's business and customers.  Mr. Strawbridge presented TNW's position that TNW's sweepstakes program and software are not illegal gambling devices and are lawful.

### Searches Of Ms. Ghreir's Stores And Home

On May 28, 2013, VPD, working with DA Ward, DOJ and the Bureau, coordinated

searches of Ms. Ghreir's stores and homes.  VPD seized paperwork, bank records, checks and cash from Ms. Ghreir's home and 70 computers with related equipment, prepaid phone cards, cash, cash registers, a television, an ATM, and a fax machine from the stores.  All of the property shown to and investigated by Investigator Lee was seized.

### Potential Criminal Action

No charges have been filed by DA Ward, whom the FAC identifies as the decision maker on prosecution.  The City detains seized computers and cash at DA Ward's direction while DA Ward contemplates prosecution.

### The FAC's Claims

The FAC generally challenges application of the advisory to Ms. Ghreir's stores and seizure of property from her home and stores.  The FAC alleges claims for constitutional violations under 42 U.S.C. § 1983 ("section 1983"), declaratory relief as well as California claims for claim and delivery, conversion, and trespass.  The FAC's specific claims will be discussed more fully below.

### *DOJ And The Bureau*

The FAC alleges that DOJ and/or the Bureau:

1.     Provided assistance addressed in the advisory along with the searches of Ms. Ghreir's home and stores and "raids" of others engaged in phone card sales;

2.     Have "disseminated the Advisory to local law enforcement agencies and directed, advised, supported, encouraged, and/or financed them both to raid and close down stores that sell prepaid telephone cards using sweepstakes promotions, and to prosecute and intimidate their owners and employees and scare away their customers; and

3.     "[A]re supporting, encouraging, and/or financing the wrongful conduct that occurred in Visalia (and elsewhere in California)."

The FAC further alleges that DOJ and/or Bureau personnel were present during the searches of Ms. Ghreir's home and stores.  According to the FAC, "the raids since the filing of this action on stores licensed by TNW are part of a concerted action by DOJ and the Bureau intended to retaliate against the assertion of TNW's civil rights and other claims in this action."

*DA Ward And The DA's Office*

As to DA Ward and the DA's Office, the FAC alleges:

1.      DA Ward "was deeply involved in investigating and searching the Dreamland and Wonderland stores";

2.      The DA's Office "was involved in facilitating, coordinating and directing the additional searches and the raids that resulted in the harm suffered by Plaintiffs";

3.      DA's Office representatives "may have been present at the raids";

4.      The DA's Office will likely conduct any criminal prosecutions and thus "exercises authority over what will happen to Plaintiffs' confiscated Property";

5.      The DA's Office bears responsibility "that (a) the Plaintiffs' businesses were either destroyed or at least severely damaged, and (b) the Plaintiffs' Property was seized, continues to be detained, and has never been returned"; and

6.      DA Ward encourages and supports VPD to violate plaintiffs' constitutional rights.

## DISCUSSCION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

The State defendants challenge the FAC's equitable relief claims "given important principles of federalism."  DA Ward challenges the FAC's claims in absence of supporting facts to impose liability against him.  Plaintiffs respond that the State defendants and DA Ward fail to establish plaintiffs' inability to prove facts to support their claims.

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit

relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged."  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). A "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are

based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).   A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

With these standards in mind, this Court turns to the State defendants' and DA Ward's challenges to the FAC.

## Declaratory Relief

The FAC's (first) declaratory relief claim seeks this Court's declarations that:

1.      Plaintiffs' sales of "Tel-Connect calling cards in conjunction with the Pong Sweepstakes Management Program 3.0 are not engaged in illegal gambling" under California law;

2.      "[U]se of the Pong System to advertise and promote Tel-Connect cards is not illegal and is not illegal gambling" under California law;

3.      "Ms. Ghreir's use of a legal Tel-Connect free promotional sweepstakes using the Pong System incident to the retail sales of Tel-Connect cards in her Dreamland and Wonderland store is not illegal and is not illegal gambling" under California law;

4.      The "Advisory's statement that computers that offer sweepstakes are 'illegal slot machines or devices prohibited by Penal Code section 330b, subdivision (d),' insofar as it relates to Plaintiffs' sales of Tel-Connect Cards in conjunction with the Pong System, is clearly erroneous as a matter of California law"; and

5.      Plaintiffs are entitled to permanently enjoin "Defendants"[3] "from: (i) attempting to close down or restrict Plaintiffs' business operations at any location selling Tel-Connect Cards in conjunction with the Pong System; and (ii) interfering with Plaintiffs' efforts, and threatening Plaintiffs and/or their employees with criminal prosecution and/or civil penalties insofar as it relates, to sales of Plaintiffs' Tel-Connect Cards in conjunction with the Pong System."

---

[3]      The FAC defines "Defendants" collectively as DOJ, the Bureau and the City.

***The State Defendants***

The State defendants argue that federalism principles bar the FAC's declaratory and injunctive relief claims.

When a government agency is involved, it must "be granted 'the widest latitude in the dispatch of its own internal affairs,'" *Gomez v. Vernon*, 255 F.3d 1118, 1128 (9th Cir. 2001) (quoting *Rizzo v. Goode*, 423 U.S. 362, 378-79, 96 S.Ct. 598, 608 (1976)), and "[w]hen a state agency is involved, these considerations are, if anything, strengthened because of federalism concerns," *Gomez*, 255 F.3d at 1128. "[A]ny injunctive relief awarded must avoid unnecessary disruption to the state agency's 'normal course of proceeding.'" *Gomez*, 255 F.3d at 1128 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 501, 94 S.Ct. 669, 679 (1974)).

The State defendants challenge the FAC's "overbroad equitable relief claims" in that they attempt to curtail the Bureau's enforcement of criminal laws to prohibit illegal gambling devices and limit Bureau assistance to local law enforcement to investigate "difficult criminal matters." The State defendants fault the FAC's absence of facts to support "a broad statewide injunction against the enforcement of California criminal law," especially given the absence of First Amendment rights to protect illegal gambling.

As an alternative to equitable relief, the State defendants point to California Penal Code section 335a ("section 335a"), which permits a superior court action to recover seized machines, devices and money. The State defendants fault plaintiffs' failure to pursue a section 335a state court action and to explain why a state court action would not provide an adequate remedy.

Plaintiffs respond that the FAC adequately describes the "State Defendants' role in depriving Plaintiffs of their constitutional and other rights, from the issuance of the Advisory, to the funding and training of local law enforcement officers, and to their direction of and involvement in undercover and other investigations and raids." Plaintiffs characterize the State defendants as "at the center of, and are coordinating, the current statewide campaign against TNW's Tel-Connect cards and Pong System." Plaintiffs argue that federalism concerns do not bar the FAC's declaratory relief claim in that "[r]equiring the federal courts totally to step aside

when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head." *Steffel v. Thompson*, 415 U.S. 452, 472, 94 S.Ct. 1209 (1974). Plaintiffs contend that section 335a is not their exclusive relief in that federal declaratory relief it available to address "a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied." *Steffel*, 415 U.S. at 475, 94 S.Ct. 1209.

### DA Ward

DA Ward argues that the declaratory relief claim chiefly addresses search and seizure of plaintiffs' property and that the FAC's facts to connect DA Ward to the search and seizure are limited to allegations that Investigator Lee observed the seized property three months prior to the searches of Ms. Ghreir's stores.  DA Ward notes that the remainder of the declaratory relief claim addresses legality of the sweepstakes program and enforcement of gambling laws but lacks facts that DA Ward "has, or will in the future, engage in any activity which would constitute an unlawful infringement of their rights."  DA Ward continues that plaintiffs do not argue the unconstitutionality of any statute but rather that plaintiffs violate no law and should be protected from investigation and prosecution.  DA Ward cautions this Court not to deter him "from pursuing the duties of his office."

Plaintiffs argue that they are entitled to declaratory relief in that continued detention of their property precludes them to conduct business and "is at the discretion" of DA Ward who has not filed criminal charges.  Plaintiffs contend that DA Ward in not immune from equitable relief to remedy an intentional pattern of misconduct particularly when no prosecution is pending.

Courts have warned against judicial intervention into criminal investigations:

A party invoking equitable intervention in the criminal investigative process has a particularly heavy burden. Only the most extraordinary circumstances warrant anticipatory judicial involvement in criminal investigations. Even where federalism concerns are absent, the fundamental concept of separation of powers dictates judicial restraint. The powers of criminal investigation are committed to the Executive branch. The balance between the Executive and Judicial branches would be profoundly upset if the Judiciary assumed superintendence over the law enforcement activities of the Executive branch upon nothing more than a vague fear or suspicion that its officers will

be unfaithful to their oaths or unequal to their responsibility. . . .

The broad power in the police and the grand jury to probe widely for evidence of crime is vital because the ability of the police to go directly to the suspect or his property for evidence of guilt is significantly limited by Fourth and Fifth Amendment protections. The Government is therefore remitted to more extensive surveillance and circumstantial investigation to detect criminality. A court should not interdict these investigations in the absence of clear proof of bad faith or arbitrariness.

*Reporters Committee for Freedom of Press v. American Tel. & Tel. Co.,* 593 F.2d 1030, 1065 & n. 122 (D.C. Cir. 1978), *cert. denied,* 440 U.S. 949, 99 S.Ct. 1431 (1979); *see Laird v. Tatum*, 408 U.S. 1, 15, 92 S.Ct. 2318 (1972) ("Carried to its logical end, this approach (of judicial supervision of military intelligence activities) would have the federal courts as virtually continuing monitors of the wisdom and soundness of Executive action; . . . it is not the role of the judiciary, absent actual present or immediately threatened injury resulting from unlawful governmental action").

Moreover, the burden to impose injunctive relief on state actors is heavy:

The Supreme Court and the Ninth Circuit have stressed that district courts must be sensitive to concerns of equity, federalism, and comity when considering injunctive relief against State agencies. *Rizzo v. Goode*, 423 U.S. 362, 375, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Thomas v. County of Los Angeles*, 978 F.2d 504, 508 (9th Cir.1992). A strong factual record is therefore necessary before a federal district court may enjoin a State agency. *Thomas*, 978 F.2d at 508. The Ninth Circuit requires a showing of pervasive and intentional misconduct before a district court may enjoin a State agency. *Thomas*, 978 F.2d at 508 (9th Cir.1992). Moreover, any injunction against a State agency must be narrowly tailored to enforce federal constitutional or statutory law. *Clark v. Coye*, 60 F.3d 600, 604 (9th Cir.1995).

*Cupolo v. Bay Area Rapid Transit,* 5 F.Supp.2d 1078, 1085 (N.D. Cal. 1997).

The FAC lacks facts of persuasive and intentional misconduct to support anticipatory judicial involvement in the State defendants' affairs and DA Ward's investigation.  Plaintiffs' points are based on an unproven premise that the sweepstakes program and their operation of it are legal under California law.  This Court is unable to assume as much to intercede into state and local law enforcement activities.  Plaintiffs offer no strong factual record for their

requested equitable relief and rely chiefly on hyperbolic sentiments of constitutional violations and harm to their businesses.  The FAC, record and their inferences in plaintiffs' favor reveal merely the Bureau's dissemination of the advisory and related assistance, VDP's preparation and execution of search warrants, seizure of Ms. Ghreir's computers, ATM and currency, and DA Ward's ongoing criminal investigation.

Plaintiffs claim to seek merely a "specific, narrowly-tailored injunction dealing only with the Pong System as it relates to the Tel-Connect cards."  Plaintiffs misread or ignore their own FAC in that the FAC's requested injunctive relief is not "narrowly tailored" and "specific." It is broad and overreaching.  The FAC asks for injunctive relief that the sweepstakes program and its promotion are legal, that Ms. Ghreir's use of the sweepstakes program is legal, that the advisory misstates the law, and that defendants cannot prosecute and enforce gambling laws as to plaintiffs.   The requested injunctive relief effectively seeks to shut down criminal investigation and prosecution as to internet café gambling activities.  Plaintiffs offer not even the remotest support for such far reaching relief, and their suggestion that requested injunctive relief "requires no ongoing court supervision" is untenable.

## Section 1983 Claims

The FAC invokes section 1983 to allege that "all Defendants" violated various constitutional rights of plaintiffs.

The FAC's (second) freedom of speech claim alleges that "Defendants" "violated Plaintiffs' rights to engage in protected communication" in that TNW "has a First Amendment right to market a phone calling card product, using a lawful sweepstakes promotion" and that Ms. Ghreir is deprived of her property to suppress "her ability to engage in communication protected by the First Amendment."

The FAC's (third) Fourth Amendment claim alleges that plaintiffs were subjected to unreasonable searches and seizures in that "Defendants had no probable cause to suspect that illegal activity was taking place at any of the search locations and failed to produce warrants and evidence of probable cause."

The FAC's (fourth) property taking claim alleges that seized computers and money

were "improperly, wrongfully, recklessly, and/or negligently seized and kept by and at the order of Defendants."

The FAC's (fifth) equal protection claim alleges that "similarly situated businesses are permitted to conduct sweepstakes that, like Plaintiffs' sweepstakes, comply with California law" but that "Defendants intentionally singled out Plaintiffs for selective enforcement, inequitable treatment and purposeful discrimination through the unequal, unjust and oppressive purported enforcement of the laws by Defendants."

### *Section 1983 Requirements*

"Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

 "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).  Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979).  Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994).  "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

"Under Rule 8(a), a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dept. of Housing and Urban Development*, 554 F.3d 525, 528 (5th Cir.

2008).

### Direct Participation

DA Ward argues that the FAC lacks facts to support his section 1983 liability in absence of facts to identify his precise conduct or a DA Office policy or custom to cause plaintiffs' constitutional deprivation.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.") "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." *Leer*, 844 F.2d at 633. Section 1983 requires that there be an actual connection or link between the defendant's actions and the deprivation allegedly suffered. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).

A plaintiff cannot hold an official liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)). A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935. "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v.*

*Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A section 1983 plaintiff "must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law." *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007).

To support DA Ward's section 1983 liability, plaintiffs point to FAC allegations to the effect that:

1.      In early 2013, Investigator Lee visited Ms. Ghreir's stores;

2.      VDP Officer Moffett's affidavit notes that he had "spoken with the Tulare County District Attorney's Office along with investigators and several Detectives throughout the Central Valley in regard to the operation of illegal gambling establishments";

3.      VDP in consultation and working with DA Ward, DOJ and the Bureau coordinated the searches of Ms. Ghreir's stores and home;

4.      All property shown to and investigated by Investigator Lee was seized; and

5.      The City detains the seized property pending DA Ward's decision to prosecute.

As discussed below, the FAC's limited facts, as compared to its conclusions and conjecture, as to DA Ward fail to raise even inferences that conduct by DA Ward or the DA Office's supports section 1983 liability. The FAC's facts, construed in plaintiffs' favor, reveal no more than the DA Office's investigation, possible assistance with search warrant preparation and execution, and a pending prosecution decision. The FAC's facts and inferences cannot be extrapolated to support section 1983 liability as to DA Ward.

### *Free Speech*

DA Ward challenges the FAC's (second) free speech claim in that its focus is not constitutionality of regulating gambling machines but rather the lawfulness of plaintiff's operation of the sweepstakes promotion, which is subject to potential criminal proceedings. DA Ward points to the absence of FAC facts to establish interference with plaintiffs' First

Amendment rights given limited allegations that Investigator Lee looked into plaintiffs' activities and no facts of a policy or practice to infringe on plaintiffs' rights. DA Ward points to the absence of a "generalized right under the First Amendment to be free from criminal investigation or prosecution."

Plaintiffs argue that TNW has "a First Amendment right to advertise and compete in the pre-paid telephone calling card business, which is protected commercial free speech." Plaintiffs continue that removal of the seized property and threat of prosecution have violated "their rights of communication, assembly, and association," especially since Ms. Ghreir lacks internet access. Plaintiffs characterize "[t]his regulation and forced closure of Plaintiffs' businesses" as "impermissible content-based restrictions on free speech."

Again, plaintiffs' points are based on an unproven premise that the sweepstakes program is legal under California law. This Court is unable to assume as much. Moreover, the FAC lacks facts to support DA Ward's First Amendment violations given its limited allegations as to an investigation, possible assistance with search warrant preparation and execution, and a pending prosecution decision. At most, the FAC alleges that plaintiffs are precluded to use the seized property, which may be illegal to possess. No facts demonstrate their inability to otherwise engage in commercial speech.

### Unreasonable Search And Property Detention

DA Ward challenges FAC's third and fourth claims arising out of the search and seizure of plaintiffs' property in that VPD obtained and executed the search warrants, coordinated searches, and seized property to expose VPD, not DA Ward, to such claims. DA Ward points to the absence of his specific conduct as to the search or seizure of plaintiffs' property and continued detention of the property. DA Ward points to the absence of facts as to insufficiency in the search warrant affidavit or VPD's interaction with DA Ward or the DA's Office as to investigation of Ms. Ghreir's stores.

Plaintiffs argue that the FAC's search and property detention claims are not subject to challenge given FAC allegations that the DA's Office adopted the advisory, investigated plaintiffs' businesses, assisted in coordinating and executing searches, and compel the City's

seized property detention pending a prosecution decision.

The FAC's limited facts, as compared to its conclusions and conjecture, as to DA Ward fail to raise even inferences that conduct by DA Ward or the DA's Office's support search and property seizure claims.  The FAC's facts, construed in plaintiffs' favor, reveal no more than the DA Office's investigation, possible assistance with search warrant preparation and execution, and a pending prosecution decision.  There are no facts that Investigator Lee had specialized knowledge which he communicated to VDP.  The FAC reveals that plaintiffs' property most likely would have been seized despite Investigator Lee's visits to Ms. Ghreir's stores.  The FAC's facts and inferences cannot be extrapolated to support search and property detention claims as to DA Ward or the DA's Office.

### *Equal Protection*

DA Ward faults the FAC's (fifth) equal protection claim in the absence of allegations that DA Ward or the DA's Office treated plaintiffs differently than other sweepstakes operators.  DA Ward points to the FAC's limited allegations of Investigator Lee's visits to Ms. Ghreir's stores to inquire into the sweepstakes program and observation of property seized three months later.

Plaintiffs accuse DA Ward and "the other Defendants" to have "specifically targeted Plaintiffs' businesses based solely on the content of their communications."  Plaintiffs continue that the "presumed basis for this unequal and disparate treatment is that Defendants dislike the form of speech and activities promoted by Plaintiffs' businesses."

Plaintiffs' arguments reflect at best the speculative nature of DA Ward's motives.  Moreover, the record demonstrates the absence of facts that other phone card sweepstake retailers are not subject to investigation or potential prosecution.  There are no facts of unequal treatment.  The FAC lacks necessary facts to support an equal protection claim.

### California Claims

The FAC's (sixth) claim and delivery claim alleges that "Defendants currently possess personal property of plaintiffs" and did not "acquire title to the Property seized."  California Code of Civil Procedure section 667 provides in part:  "In an action to recover the possession

of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention."

The FAC's (seventh) conversion claim alleges that "when conducting the illegal raids and seizures, Defendants City of Visalia and the Tulare DA caused damage to Ms. Ghreir's personal property located at her home and Plaintiffs' property at the Wonderland store."

The FAC's (eighth) trespass to real property claim alleges that "Defendants City of Visalia and the Tulare DA intentionally entered Ms. Ghreir's property without authorization."

DA Ward challenges the FAC's claim and delivery, conversion and trespass claims for failure to include the substance of these claims, as currently alleged in the FAC, in a claim submitted to comply with the California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et seq.  DA Ward points to the absence of Ms. Ghreir's timely Claims Act claim submitted to Tulare County.[4]  DA Ward notes that TNW's Claims Act claim is premised on allegations of plaintiffs' original complaint which lacked allegations that DA Ward searched plaintiffs' property or seized plaintiffs' personal property.  DA Ward argues that the Claims Act claim is premised on VPD's seizing property during searches, not DA Ward's possession of property.

Plaintiffs respond that TNW need only show that DA Ward prevents its possession of property.  A conversion plaintiff "must show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of his property." *Oakes v. Suelynn Corp.*, 24 Cal.App.3d 271, 278, 100 Cal.Rptr. 838 (1972).  "Thus, a necessary element of the tort is an intent to exercise ownership over property which belongs to another." *Collin v. American Empire Ins. Co.,* 21 Cal.App.4th 787, 812, 26 Cal.Rptr.2d 391 (1994).  Plaintiffs argue that the FAC sufficiently alleges that DA Ward "is directly implicated in . . . the continued detention of the Property" and that the key is not DA Ward's physical control over the seized property but rather his ability to compel the City to detain the seized property.  Plaintiffs further argue that facts pled in plaintiffs' original complaint and FAC "all

---

[4]    Plaintiffs acknowledge that Ms. Ghreir filed no Claims Act claim with Tulare County and thus does not challenge dismissal of the claim and delivery, conversion and trespass claims against DA Ward.

relate to the same fundamental actions and failure to act of the Tulare DA" to excuse the submission of a new Claims Act claim.

The Claims Act describes the specific steps which must be taken before a civil action for money or damages may be brought against a public entity. *Addison v. State of California*, 21 Cal.3d 313, 316, 146 Cal.Rptr. 224 (1978). The Claims Act requires timely filing of a proper claim as condition precedent to maintenance of an action. Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written claim to the applicable public entity is required before a "suit for money or damages may be brought against a public entity"); *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390, 94 Cal.Rptr. 73 (1971). California Government Code section 911.2(a) provides: "A claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action."

The claims procedures applicable to actions against public entities are the same for actions against public employees. Cal. Gov. Code, §§ 950-950.6. A "government claim must be filed with the public entity before a tort action is brought against the public entity or public employee." *Watson v. State of California*, 21 Cal.App.4th 836, 844, 26 Cal.Rptr.2d 262 (1993) (citing Cal. Gov. Code, § 950.2).

Compliance with the Claims Act is mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944). Failure to file a claim is fatal to the cause of action. *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409 (1961). "Failure to allege facts in a complaint demonstrating or excusing compliance with prelitigation governmental claims presentation requirements of the Tort Claims Act subjects the complaint to a motion to dismiss for failure to state a cause of action." *Comm. for Immigrant Rights of Sonoma County v. County of Sonoma*, 644 F.Supp.2d 1177, 1205 (2004). A "plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement." *State v. Superior Court*, 32 Cal.4th 1234, 1243, 13 Cal.Rptr.3d at 534 (2004). "Accordingly, submission of a claim within [six months] is a condition precedent to a tort action against

either the employee or the public entity."   *Williams v. Horvath*, 16 Cal.3d 834, 838,129 Cal.Rptr. 453 (1976).

"[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected."   Cal. Gov. Code, § 945.4.   California Government Code section 910 addresses the content of a government claim and requires the claimant's "name and post office address," the "date, place and other circumstances of the occurrence . . . which gave rise to the claim" and a "general description" of the "injury, damage, or loss incurred so far as it may be known at the time of presentation of the claim."   The Claims Act bars "actions alleging matters not included in the claim filed with the public entity."   *State of California ex rel Dept. of Transportation v. Superior Court*, 159 Cal.App.3d 331, 336, 205 Cal.Rptr. 518 (1984).

The California Court of Appeal has explained:

> If a plaintiff relies on more than one theory of recovery against the [governmental agency or employee], each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer [or dismissal] if it alleges a factual basis for recovery which is not fairly reflected in the written claim.

*Fall River Joint Unified School Dist. v. Superior Court*, 206 Cal.App.3d 431, 434, 253 Cal.Rptr. 587 (1998) (brackets in original; citations omitted).

"Courts have consistently interpreted the Tort Claims Act to bar actions alleging matters not included in the claim filed with the public entity."   *State of California ex rel Dept. of Transportation v. Superior Court*, 159 Cal.App.3d 331, 336, 205 Cal.Rptr. 518 (1984).   "In other words, the factual content of the plaintiff's claim [is] viewed by the trial court as operating to proscribe the limits of any later action for which filing the claim is a precondition."   *Williams v. Braslow*, 179 Cal.App.3d 762, 770, 224 Cal.Rptr. 895 (1986). Each "theory of recovery" must be reflected in a timely claim, and "the factual circumstances set forth in the claim must correspond with the facts alleged in the complaint."   *Munoz v. State*

*of California*, 33 Cal.App.4th 1767, 1776, 39 Cal.Rptr.2d 860 (1995).  "If a plaintiff relies on more than one theory of recovery against the [public entity], each cause of action must have been reflected in a timely claim."  *Nelson v. State of California*, 139 Cal.App.3d 72, 79, 188 Cal.Rptr. 479 (1982).  A Claims Act claim "must set forth all the legal and factual bases that will be asserted in any subsequent lawsuit."  *Doe 1 v. City of Murrieta*, 102 Cal.App.4th 899, 920, 126 Cal.Rptr.2d 213 (2002).

The Claims Act is designed to protect governmental agencies from stale and fraudulent claims, to provide an opportunity for timely investigation, and to encourage settling meritorious claims.  *Johnson v. San Diego Unified School Dist.*, 217 Cal.App.3d 692, 697, 266 Cal.Rptr. 187 (1990).  The "claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim."  *Shelton v. Superior Court*, 56 Cal.App.3d 66, 82, 128 Cal.Rptr. 454 (1976).

Since the claims statutes should not be used as traps for the unwary when their underlying purposes have been satisfied, courts employ a test of substantial compliance, rather than strict compliance, in determining whether the plaintiff has met the filing requirements of the Claims Act.  *Johnson*, 217 Cal.App.3d at 697, 266 Cal.Rptr. 187.  "Although a claim need not conform to pleading standards, the facts constituting the causes of action pleaded in the complaint must substantially correspond with the circumstances described in the claims as the basis of the plaintiff's injury."  *Loehr v. Ventura County Community College Dist.*, 147 Cal.App.3d 1071, 1082-1083, 195 Cal.Rptr. 576 (1983).

Nonetheless, the substantial compliance doctrine "cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute."  *Loehr*, 147 Cal.App.3d at 1083, 195 Cal.Rptr. 576.  "The test for substantial compliance is whether the face of the filed claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation."  *Connelly v. County of Fresno*, 146 Cal.App.4th 29, 38, 52 Cal.Rptr.3d 720 (1988).

With their concession that Ms. Ghreir lacks claim and delivery, conversion and trespass

claims against DA Ward, the key problem for plaintiffs is the FAC's failure to identify seized property belonging to TNW, especially since TNW is not included in the trespass claim which addresses search warrant execution at Ms. Ghreir's properties, not at TNW's properties.   The seized property at issue includes computers, an ATM console and US currency taken from Ms. Ghreir's stores.   The FAC alleges no interest of TNW in the seized "Property."   Plaintiffs fail to demonstrate that the theory of DA Ward's control over the seized property was included in a Claims Act claim submitted to Tulare County.   Without more from plaintiffs, the substantial compliance doctrine fails to save claim and delivery and conversion claims for TNW.   The claim and delivery, conversion and trespass claims are subject to dismissal.

## <u>CONCLUSION AND ORDER</u>

The FAC and plaintiffs' supporting papers are a study in verbosity and a clutter of hyperbole and extraneous matters intertwined with limited pertinent facts.   On one hand, plaintiffs claim that declaratory relief is the "core" of the case and on the other hand, they assert menacing doom from seizure of Ms. Ghreir's property.   In distilling the FAC and plaintiffs' arguments, this Court surmises that plaintiffs' chief goal is to avoid criminal prosecution under the guise of unsupported constitutional violations.   Based on the FAC, this Court is in no position to second guess state and local law enforcement.   If TNW truly seeks to test the legality of its sweepstakes program (in particular as to California Penal Code section 330b), it should do so in the context of a clearly defined declaratory relief claim.   If Ms. Ghreir truly seeks the return of her seized property, avenues are available to her via section 335a and potentially California Penal Code section 1538.5, 1540 or related proceedings.   However, pursuit of such intentions through the FAC's convoluted allegations, claims and requested relief against the State defendants and DA Ward is unwarranted and unsupported.

As such and for the reasons discussed above, this Court:

1.   DISMISSES without prejudice and with leave to amend the FAC's (first) equitable relief claim and the FAC's (second through fifth) section 1983 and related claims;

2.   DISMISSES with prejudice the (sixth) claim and delivery (seventh) conversion claims against DA Ward to the extent alleged on behalf of Ms. Ghreir and otherwise

DISMISSES without prejudice and with leave to amend the (sixth) claim and delivery and (seventh) conversion claims as alleged against other defendants on behalf of TNW;

3.      DISMISSES with prejudice the (eighth) trespass claim against DA Ward;

4.      ORDERS plaintiffs, no later than December 23, 2013, to file and serve either: (a) papers to dismiss this action against the State defendants and DA Ward; or (b) a second amended complaint which shall not exceed 25 pages and which shall be organized by sequential events or by specific topics to assist plaintiffs to focus on succinct pleading of facts and claims. If plaintiffs elect to file a second amended complaint, plaintiffs are admonished to pursue only legitimate, genuine claims based on sufficient supporting facts and law, that plaintiffs' counsel is subject to liability under 28 U.S.C. § 1927, F.R.Civ.P. 11, and other authorities, that this Court will grant plaintiffs no further attempt to plead claims, and that disobedience of this order is grounds to dismiss the second amended complaint or any of its claims; and

5.      ORDERS defendants, no later than January 20, 2014, to file and serve a response to the second amended complaint, as necessary.

IT IS SO ORDERED.

Dated:   __**November 27, 2013**__          ____**/s/ Lawrence J. O'Neill**____
                                                              UNITED STATES DISTRICT JUDGE